Do you want to save some time for rebuttal? Yes. The way I would prefer to do this, as you know, we're here on an appeal and a cross appeal, and I would prefer to address the appeal issues, which are the form non-convenience issues first, and I'll reserve six minutes at the end to handle the cross appeal issues, which go to the arbitration. So if I could begin with the form non-convenience motion, I just remind the court that I represent the court appointed trustees in bankruptcy for the estate of KPN Quest. And as we set forth in our brief on the form non-convenience issue, we think the judge made a series of very important errors. And I say they're important because they go to the heart of what the form non-convenience doctrine is all about. That is, it is at its heart, not a balancing test, which is how the district judge began and began his introduction to the argument, but it is a reflection of the principle that under the American system of laws, the plaintiff, subject to the statutory venue provisions, personal jurisdiction, things set by Congress, the plaintiff chooses his jurisdiction subject to one constraint, which is that you cannot choose your jurisdiction in order to oppress or vex your opponent. So there is a presumption that the plaintiff has that right, unless that right is abused. The district judge in his approach to the case, not only began by describing an even balance, but then stripped the trustees of the deference that was due. And I'd like to cover two ways in which he did that. And then I'd like to turn to the oppression and vexation standard, which he also modified the law a little bit on. The deference issue is all important in this court's cases and the court has reversed on a number of, in a number of situations where the deference to the plaintiff's choice has been denied. How did he do it here? Well, the first mistake he made was he looked at the interests, the convenience interests of the trustees based on their personal convenience. Now that is, this is what he said in response to the issue. Do you get to presume that the choice of form is convenient for the plaintiff? If they're out of state, you can't simply presume it. They must come forward with some convenience showing. So he looked to the convenience and this is how he disposed of the trustees arguments. He said, they don't live here. They don't have businesses here. They don't intend to move here. I wouldn't disagree with you on, on that point. I think you're, you're right. I wouldn't look at it from the standpoint of the trustees convenience, but certainly there are things happening in the other forum that were very, very important in the district court's analysis. There was a bankruptcy, there was an estate already in place in the Netherlands and this case arises from that estate because isn't it the trustees in the bankruptcy that are pursuing the claims in the United States? There is of course an estate that is in place, but we have, are familiar here in the United States, of course, with the fact that trustees follow the defendants in order to bring lawsuits. And of course the respect for that is actually reflected in statute nowadays. 11 USC 1501 is Congress's reflection of the principle that we afford trustees their official duty. That is we treat them with respect when they come here to the United States in pursuit of their duties under the insolvency laws of foreign states. There are a lot of, certainly a lot of factors that have to be weighed and balanced in the case from the unconvenience analysis. One of them that I'm thinking of certainly is are there any, any issues at all that are being presented here that would not be litigated in the Netherlands? Well, none of these, this lawsuit unless we brought the lawsuit there would have been litigated in the Netherlands. The judge made a fundamental mistake both as to the existence of the proceedings that he commented on because he was dead wrong about that in terms of judging. And he said with suspicion, the motives of the foreign trustees for being here, there wasn't a state that is formed. Of course, the trustees then go about in their duty to liquidate the estate and the estate assets. And this is quite European to follow the defendants where they are located and sue them in their jurisdictions. There were no other proceedings pending at the time when they commenced this suit and developed this complaint in this particular case. There were no other proceedings except for the formation of the estate. But there were proceedings at the time that Judge Brown decided the issue. Well, there, well, there are very limited proceedings at that time. Counselor, you made a big deal about it in your brief about how, I mean, I understand what you're saying, suspicion at the time of the filing. Why does it matter when the cases were filed? Wouldn't the point of reference temporarily be when the foreign non-convenience motion was filed? Well, there's two issues. One is, should we be suspicious of their motives for bringing the case, which gives you deference. So at that point, you're looking at what happened at the time that the case was filed. You could look later as to whether there were proceedings pending later. Even then, later, there were more proceedings pending here about KPN Quest. And let me just point out what the three proceedings were that were invoked. The first was the defendant's own claims for insurance coverage for these lawsuits, which doesn't seem, that seems like a pretty, pretty big bootstrap to have your DNO claim carry in your merits claim. Weren't those claims filed by the insurance carriers disclaiming coverage? Yes, but it's on the DNO policy for the defendants. The other two claims, supposedly, one is a complaint, the shareholders who are not represented because these claims are only brought for the benefit of accreditors. Is that a prelude to more formal proceedings? It could have been, but it was not. That is, it is a request to ask the public authorities to commence a prosecution. Time goes very quickly. There's so much in this case, maybe we'll take a little extra time. But I do want to ask you one thing because it's something I'm curious about. Judge Brown did not take into account whether or not your RICO claim, which I think is your hook here, your basic hook, whether you have a colorable claim. And I've looked at your complaint and I see in your complaint, scattered throughout various paragraphs, but more particularly in the introduction, words like a pattern of fraudulent activity, misrepresentations, mismanagement, deceit, et cetera. The fraud is included in various paragraphs in this complaint. And the essential fraud, I think, is that misstating the value of the, of Quest and KPN Quest for perhaps acquiring other business entities or for simply restating the value of the stock, whatever purpose, but it's fraud. It's a securities. It seems like a securities fraud. And if I were to think of this as a securities fraud case, of course, you, you would be trumped by the PSLR. The PSLR. But let me get to the point. Of course, if that's true, then should I not be able to take that into account? And if I do, what you have is a Dutch law case. I may have a Dutch law case, and I would just point out that under our system of laws, you can't bring a Dutch law case in the United States. Oh, that's right. I didn't mean it that way. Your question was... I didn't mean it that way, but in the analysis, in the, of course, foreign non-convenience analysis, that becomes significant. It shifts, I suppose, a small amount, but I would suggest that the PSLRA issue is actually quite a difficult one. What we're confusing here is Quest has securities holders. It is manipulating a foreign company. You have a quite a bit of a distance between their securities injuries and the injuries to the company itself. And the distinction is repeatedly made and should be made between a company claiming a breach of fiduciary duties to itself or a fraud that is caused by a third party to itself and the damages that result to the company. And then saying, because someone then reports about that in their books, in the Quest books and records, that security's possibility of a securities action shields that party from the third party action. In both cases, isn't the locus of the damage the shareholders? No, Your Honor. The locus of the damage to us is for the creditors. I mean, what you're recovering is a liquidation deficit that really does not help the shareholders at all. And that's actually the point. It's an injury to the company, which is quite distinct from any injury that would ever be suffered by the shareholders. And that is reflected in what's called the liquidation deficit. We're going to just add five minutes to your argument. Okay. If I could continue. You did ask about the litigations that were pending. The second was the shareholder request for an investigation, which was granted in small part, but it went nowhere. Why? Because there's no funding for it. It simply was a request. Judge Brown made another mistake here. He called it an investigative proceeding. It was a request to begin an investigative proceeding. So what's the status of that right now? So far, it's gone nowhere. They granted a small, towards the end of the period in question, they allowed the possibility of proceeding with that. And the only thing that has happened is they have no funding to proceed. So nothing has happened with it. But that would be a shareholder case. They don't have an SEC there, is how it would work. The shareholders don't have a source of funds. And this is a public proceeding commenced by shareholders who read our complaint and said, well, this is pretty good. Maybe the shareholders were injured as well. We'll go forward. The last was right before the motion was granted, there was a group of creditors involving one loan, one loan, one syndicated loan at the end of the period for a separate action. That's all that's been pending. That's all that was ever raised there. Here, you actually had a group of cases involving KPN requests that were pending. I want to cover a second error on the deference issue. I just, I'm trying to get in here. I understand that in the action, there was reference to a number of Dutch statutes. Was it 14 or 12 statutes? No, Your Honor. There was a reference to, I believe, there's a claim brought under a single Dutch statute, which is a right of action that is granted to the trustees for the benefit of creditors to pursue against, it could include what they call de facto managers. I believe Judge Brown, I think Judge Allister is correct. I think Judge Brown referenced 12 provisions. He did. He surely did. And maybe my, or the opponents can point this out to me. We referenced it. We pointed out that one of those statutes, the only statute we referenced, makes a cross reference. I'm coming down to it. If this matter remains in Holland, in the Netherlands, are there remedies under Dutch law for fraud, for action regarding the alteration of the actual value of stock and so forth? Are there any statutes denying that? We are not complaining that Dutch law would not afford us remedies. Our argument for being here is not the lack of remedies elsewhere. It is the affirmative convenience of being here. Thank you. Thank you. I just wanted to, thank you. And the deference that is granted to us here. In other words, we came here because the defendants were here. You don't have to worry about a default and an enforcement action. You would get the defendants over there too, wouldn't you? I wouldn't admit that I couldn't get the defendants over there. The director surely, perhaps under the Dutch law claim, because of the way this system works. But you know, long arm statutes are pretty good here in the United States. They are far less good over in Iraq. They have never, for example, conceded that they would make themselves amenable to Dutch jurisdiction. I don't know that they have made those concessions in any of the other proceedings. And you always take a risk of a default on those claims. And then you'd have to take your judgment and then try to enforce that judgment. It is quite difficult. But I understand that your decision has to be given deference in the balance. Yes, it does. But you say that the primary reason why you are here is because you think you have jurisdiction of them here. There are four reasons why we came here. The first reason is... It was brought here in New Jersey in particular because all the parties had contacts with New Jersey. Mr. Naccio and one of the other defendants was actually located here. Quest actually does active business here and the other was closest here. So it qualified under the venue statute. It was the closest one. We had no particular desire. It was the most appropriate venue to bring the action. And at the time, Mr. McMaster, who was the other principal along with Mr. Naccio, there was a very real issue of his documents and the documents that were in his possession. And so we came right here to the source, which was McMaster and Naccio. Now, the four reasons that I would say is one, and I think it's important that when you bring an action in defendant's home court, you are trying to avoid jurisdictional disputes, one always thinks. One is forestalling it. One is getting right to the heart of the matter. So if you want to go fast, you go where the defendants are located. That's the least likely circumstance in which a jurisdictional issue will be raised. The second is it turned out that the trustees have their own documents, which are publicly available. They they're available there, but they're seeking the additional documents they don't have, which one among them McMaster's hard drives, which he had taken from Europe and the quest documents. So they are pursuing for their convenience, the documents. Then it turns out the witnesses are here because notwithstanding what you might assume, there were six members of the board of directors. This is a small board of directors are located here in New Jersey or in the United States, the actual board of directors, including the two independent members of the board of directors. The rest of the witnesses are located here too in this. And I call your attention to the affidavit on this issue that was submitted, the financial offices of KP and quest. Again, they're portraying this as this European company. The financial offices are located here in the United States. Mr. is located here. Mr. is located here. So those are the KP and quest witnesses and the quest witnesses, the ones who were alleging we're pulling most of the strings. All of those quests, witnesses are located here. So here in the United States, though, you will see that they do predominate. And this is the 10 on the affidavit towards New Jersey, including, including the board members. They seem to be concentrated here. Why that is true as a fact, just happens to be the fact it was something we found out about and we're aware of. And that was important to pursuing a suit, a suit like this, because you want to be where the witnesses are, where you have real access to Colorado. There is the quest does its business there. There are some people located there, but the ones with the closest contact to the KP and quest aspect of this, which is Mr. McMaster, I believe Mr. Naccio and others tended to be in New Jersey. I understand there's some, something close to 2000 boxes of, of documents that are located in the Netherlands that are relevant to this case. The company's records after the bankruptcy are sequestered and put in boxes as judge Brown did correctly assess documents. Don't weigh in the giant balance anymore because there were many more documents of course, located here. And those are the quest documents. Now it was for the, for the trustees perspective, they got their own documents, the quest documents, which are far more than 200 boxes, far more than 200 boxes and have already been part of the production. We do this nowadays with CDs being exchanged. Could you touch on the, the, the issue of oppressive oppressiveness of having to defend the case in the Netherlands? Well, exactly. Your honor, the, once the deference is distort, restore as it would be, by the way, once you, you realize that, that, um, Dutch officials are given national treatment by treaty, in this case, there's actually an affirmative treaty that does that notwithstanding the finding of the district judge, then you do move to the oppressive and vexatious standard. The first thing that Jeff said is I won't apply that standard because this is an out of state plaintiff. And that's just completely contrary to the case law. Then he says, I will apply it. But did he apply it in a real sense, which is, should it be easy for a defendant sued in its own jurisdiction, in its own court to say, this is oppressive for me to defend where I'm already defending any number of other related suits here in my home court. Should that defendant be able to easily say I'm oppressed by doing it? Certainly he can't claim surprise. Certainly he can't claim that he didn't have the protection of his laws when he sued there. And the oppressiveness and the vexatious aspect was only based in the judge's view on this mistaken notion that there are these other proceedings had been going on or were going on. But as it turned out, they are not proceedings of great consequence. The trustees are not even party to any of them except the insurance. And they are there as nominal parties because it's a DNL policy written on. It makes a really good point, Judge Shigaris. Judge Armisen? No questions. Thank you. Mr. Algerton, we'll get you back on rebuttal. Thanks very much. Mr. Sherman, we'll have to give Mr. Sherman a little extra time as well if you need it, Mr. Sherman. Thank you, Your Honor. Jonathan Sherman from Boies Shiller, a flexner for the defendants, all the defendants on this appeal. Maybe you can start with that last point, mate. I've thought that I'm a defendant here in the United States. Why don't I want to stay here? I'm being sued here. I could best represent myself here in the United States. Why do I want my case? Why do I want to go to the Netherlands? I think there are two reasons. The first reason is that notwithstanding what Mr. Algerton said, there are four litigations. They are in the Netherlands. The motion was made after at least two or three of those litigations were filed. Two of the litigations, one is a litigation, the other is an arbitration, are DNO proceedings, as you pointed out, Judge Fortas, brought by the insurance carriers. But they involve the same allegations in this case because they're based on the same alleged fraud in this case. They have to prove up the fraud in order to defend the insurance policy. The second proceeding, which is also continues on, is this enterprise chamber investigation. Now, you're free to look at the investigation request. It was granted. It is true, as Mr. Algerton says, that it was granted, that only a part of it was granted. But it's not true to describe it as insignificant or not continuing. In fact, the only reason it's not continuing is because the trustees have been asked to and refused to fund it in the Netherlands. The question was, why is it vexatious and oppressive for defendants who live here to be sued here, to have to go to the Netherlands? The first question is because they're there already. But the second and very important answer to your question is because they have to go there anyway. They have to go there in order to, the defendants in this case, have to go there in order to assert contribution claims. KPM, which was a co-venturer in this business, and it was exactly the same until the very end, percentage of Questown, is a Dutch company. The KPM designated board directors, the KPN officers, KPN management, those are Dutch entities and persons. They are all defendants to proceedings in the Netherlands. And they are not going to lightly walk in to the United States courts. Now, the judge below, Judge Brown, recognizes this. And it comes right out of Piper. Piper, the leading case in this area in the Supreme Court, said that it clearly points towards dismissal, or at least a strong evidence of dismissal, if what you have to do is split claims. You have to split your contribution claims in the foreign jurisdiction and you have to go and you have to have the underlying proceedings here. Nothing that we, the defendants, must go to the Netherlands if in this 2.4 billion euro case we are to seek contribution. We, the American defendants, are to seek contribution from our brothers and sisters in the Netherlands. Now, if you're... What happens to the RICO case? Well, in the Netherlands there is no RICO. So there's no question, and nor is there a convenience perspective, with losing trouble damages. But it is nevertheless true, as you pointed out, and as Mr. Elgar conceded, that there are fraud and mismanagement and fraud type remedies, similar to our remedies out of pocket expenses, that are assertable in the Netherlands. And you are exactly right, Judge Flinders, when you say that this is a securities case and that your precedents dictate, as well as precedents from the Ninth Avenue decision, that when you have, in essence, conduct actionable as securities fraud, you lose that RICO claim. It's an area that I'm somewhat reluctant to get into because it's a question of whether it's appropriate in the forum non-convenience appeal to address how the merits of a case this might be more appropriate for 12b6. I'm not really sure about that. That's why I asked the question. Well, actually, it's an important question because, of course, Judge Brown, Judge Brown was aired on the side of caution and assumed that the case would improve the RICO for precisely that reason. The problem is what those cases that talk about the merits, getting into the merits to deal with, are truly judging the facts. Are the plaintiffs correct? Are the defendants correct? It is not applicable to the claim here under the PSLRA. It is not applicable, as it wasn't in this Court's decision in Dahl, to a facial question looking at the complaint, taking the complaint as you are able to do under a typical de novo standard and comparing it to the language of the private securities litigation reform act. So it's not really a merits question. All you're doing is looking at the complaint the way that the court, the district court, excuse me. Counsel, when you start talking, would you mind moving that microphone toward your mouth more? Excuse me. Would you mind moving the microphone? Down or towards me? Toward you. That's the first time anyone has ever said that. Well, you know, we're carefully listening to you now, but we actually do review these tapes after the fact, too. So we want to be sure and catch all of your wisdom here. I apologize. And the case, going back to Dahl, if I could, your decision in Dahl said that you cannot tack on a specious, baseless claim and expect that you can overcome what is, in that case, a Norwegian law case and what you said, Judge Fuentes, is a Dutch law case. There are, indeed, 11 statutory code provisions cited in the amended complaint and in the amended complaint. There's one Dutch cause of action, but it's based on different violations of the Dutch civil code. Actually, it's 11, not 12. So the question, your question, Judge Fuentes, of why we would want to litigate in the Netherlands, it's not that we want to litigate in the Netherlands. It's that we're there. We have to be there, as Judge Brown recognized. We have to be there at some point. We are entitled to contribution, as the court recognized in Piper. And that is the essence of the private interest analysis that Judge Brown did here and that we presented to Judge Brown. The forum not convenience doctrine is not a doctrine about whether the plaintiffs can come to a jurisdiction. It's about comparing the relative conveniences of one jurisdiction and another. Mr. Elgarten is correct. There is a preliminary question from Piper and from this court's decisions. We already have a number of cases here in the United States. And my quest communication has to defend a number of cases in various jurisdictions. And I would imagine that your individual clients have to do that as well. I can't help thinking off the top of my head that you want to go to the Netherlands to dodge a bullet, which is a RICO case. I don't know why, if you can convince me, why you would want to go to the Netherlands. I have to go to the Netherlands. All right. I want to be very clear about that. But you have to go to the Netherlands, but you also have to defend cases here in other jurisdictions. Well, let me deal with the nature of the other cases and then see if I can answer the why would you want to go to the Netherlands question again. The nature of the other cases fall into two categories. There are cases that, many of which no longer exist, but which were brought against Quest Communications International Inc. and related officers and directors, not, by the way, Mr. McMaster, who was just a KPN Quest officer, but that have to do with Quest's financials, Quest's restatement, issues specific to Quest. The only connection between the two, Quest and KPN Quest, is that Quest was a shareholder and that the model, the accounting model, the accounting methodology, was the same or actually was similar. It wasn't precisely the same. So you really, it's really unfair to take those cases and use them as evidence of a convenience for this case, which if you take a look at the petition of the Dutch Shareholders Association, but one of the things they said is, yes, the trustees brought this action in the United States, but they omitted KPN and they omitted the entire Dutch side of it. So the U.S. cases against Quest really do not show anything about the convenience of KPN Quest, Dutch bankruptcy, Dutch-operated company. There are two cases, two, in the United States dealing with KPN Quest. One is a $10 million case in Arizona, which has been severely limited by appellate practice out there, and involves specific allegations of specific misrepresentations dating to 1999 and early 2000. There is a second case, a bondholder case called Appaloosa, which is in the Southern California currently under the PSLRA motion stay. And that case, that case involves the question of whether or not bondholders who purchased KPN Quest bonds after KPN Quest announced that it was having serious financial trouble in April of 2002. Could you do, I really appreciate that. Could you do one thing? Could you state why Judge Brown abused his discretion and just tick off what he did that was wrong that you would like us to? You mean why he did not abuse his discretion? Why he did not, I'm sorry. And to be clear, it's this clearly clear abuse of discretion standard. Now, while you're being interrupted, I've had difficulty following your argument as to what you were talking about. Are you talking about public and private interests involved? Are you talking about vexatious and oppressive? And I would like to pigeonhole the arguments under the issues that are raised. And while you are at it, when I listened to the argument of your friend, I didn't understand what his argument, what issue his argument supported. Perhaps you could help me on that. Let me see if I can do it, as you suggested in an earlier argument. Let me tell you the sort of three issues I think that, certainly the three issues. He assigns for error and why we think none constitutes an abuse of discretion. The first assignment of error, Judge Aldister, was that the judge had applied a proper level of deference. Now, our position on that, that's the first question. The second is whether or not the court properly applied what we've been in shorthand. And it's important not to do it in shorthand. We're referring to as the oppressive and vexatious standard. And based on the notion that Judge Fuentes was asking about, about home. And the third is the balance, that he somehow, in this wide girth he's given, somehow messed up the balance. Here's the answer to the first of those three questions. The answer to the first of those three questions is that it is unquestionable that the plaintiffs are Dutch, that they have neither personal nor professional contacts and that, just to respond to your original question right at the beginning of the argument, Judge Fuentes, the reason that they are here is only because they've been given permission by a Dutch judge. We don't know what that permission constituted, other than that they could come here. We don't have a written order. We don't know if there was a convenience analysis. A Dutch judge let them come here to bring this lawsuit. That is, they are foreign. They, under your rules and under Piper's standards, do not get deference of the kind that a New Jersey or United States resident would get unless they can make a strong showing of convenience. Well, that's another point. Now, why shouldn't we follow the Second Circuit's jurisprudence, ending with Pollock's, regarding deference to foreign plaintiffs versus a national access treaty? Now, I think we have to concede Judge Brown got it wrong on the treaty. There is one. If I might. The treaty, and I want to thread back to the answer to Judge Aldister on these three points, but here's the answer on the treaty. And this comes up in Pollock's. It comes up in Irigori, which the Second Circuit relied on. It's actually been cited in Southern District of New York cases afterwards. The answer on the treaty is that all it does is give equal access to similarly situated foreign nationals. So if you're an American expatriate and you reside in the Netherlands, you get exactly the same treatment with respect to this deference issue that the Dutch trustees get. But you get less than what an American resident of New York or New Jersey would get. And if you're a Dutch national living in the United States, the treaty gives you that same presumption of deference. So if they lived here, the treaty would give them exactly the same deference that I would have if I were bringing a lawsuit. So is our law in accord with the Second Circuit? Well, you have not addressed this question, the treaty question. But your law on deference is in accord with the Second Circuit. The Second Circuit characterizes it as a, they use the word bona fide connections test. But the Second Circuit, this circuit, the Fifth Circuit, in a decision written 20 years ago by Judge Alderson, all apply the same Piper standard. I was very young then. But you were very correct. The law hasn't changed. There is an initial analysis of deference. And if you're foreign, not a United States resident, whether you're a U.S. citizen or not, you do not get the deference. Now, the reason that the judge decided not to let the plaintiffs crawl back up to the American residence level of deference. Before you leave that, is Judge Brown's, I guess, mistake, is that error? And does that affect the bottom line ruling? No, for a couple of reasons. The first is that it's an immaterial error. Because as I've told you, as I've suggested, that not even under Pollock's holdings or the Second Circuit's decision, does an expatriate American citizen get a high level of deference? And that's the best that Dutch residents can get. The second is that the court in Piper basically, the court in Piper said, in the case of an American or of a citizen who had full deference, the court in Piper said that where, after doing the imprecious and vexatious or balancing analysis, where dismissal is strongly indicated or the balance of the factors points heavily towards dismissal, as Judge Brown found here they did, you get dismissal. So the deference is, in a way, if I might be colloquial, icing on the cake. I want to be clear about this oppressive and vexatious versus balancing issue, the second and third issues I raised in response to your question, Judge Aldiser. The oppressive and vexatious standard is the same thing as the balancing of public and private interests. The rule that the Supreme Court articulated in Piper is, is the action oppressive and vexatious, here comes the important part, out of all proportion to plaintiff's convenience. That's a comparison. In footnote six in Piper, which hangs off of that quote I just gave you, they listed the public and private interest factors we've come to be familiar with. So the judge weighed those factors, and we think he weighed them properly, and found that the case pointed heavily in favor of dismissal, both on public interest without dismissing the Rigo case or even addressing it, and on private interest. I'd like to, because I know my time is short. Actually, I guess my time is longer than I thought it was. I just want to get to the- Could you talk a little bit about the evidentiary and maybe the witnesses and discovery, as one jurisdiction compares with the other? That was what I was going to do. There are really two issues on the sort of witness. Let's talk about the private interest analysis. The first is the comparative analysis of witnesses. Now, I don't know where the- The trustees have said over and over again, in briefs and again today, that the most important witnesses are in the United States. I don't know where they got that from. If you look at the record, you will see the affidavit of their associate, Mr. Wolf, said it listed the names of the witnesses. I don't have the JA site right committed to memory, but you'll find it. He said, these are the 17 most important witnesses. They then assert in their brief that they're the most important witnesses. This is a case, your honors, not about a fraud committed in the United States. It's a case about a fraud allegedly committed in the United States and the Netherlands. The whole theory of the amended complaint is that KPN had the wall pulled over its eyes. All of these people who worked at KPN, all these folks who are listed in this bank case- I gather you say that the substantial harm, the most substantial harm occurred in the Netherlands. In this record, the only harm occurred in the Netherlands. That is to say, a bankrupt company in the Netherlands, based in the Netherlands, whose primary asset, these Euro rings, which transmitted information throughout Europe in high-speed data transmission, were all owned by KPN before this venture started. The employees were largely Dutch. Yes, it's true. Yes, it's true. There were American supervisory board members, but there were also Dutch supervisory board members. Their whole complaint is based on the notion that the latter, the Dutch members of this community of KPN Quest, were lied to by the Americans. The lying took place, therefore, by definition in the United States and in the Netherlands. And injury, causation, damages, and injury, Judge Fuentes, took place almost entirely, as Judge Brown said, in the Netherlands. The other private interest factor- I should actually talk about the documents for just a second. These 2,000 boxes of documents that you mentioned, they're the only hard copy documents in this case. It is true that electronically the documents are awash, and it's also true that when something's awash, you don't count it in the defendant's favor. But it is nevertheless true that the only place the defendants here have access to the core 2,000 boxes- 2,000, not 200- boxes of documents in the Netherlands is in the Netherlands. They won't bring them over here. They won't pay for them to be sent over here. We have to go there to read them, or we have to pay for copying. So that is a factor. It's not something Judge Brown rested his decision on, but I wanted to clear that up. The other private interest factor is this question of contribution claims, which has not been addressed in the briefs by the trustees, and I think it's inescapable that we have to litigate there. So what the judge said- to bring it sort of full circle, Your Honor- what the judge said is, he said, look, it can't possibly be that Dutch trustees in a large Dutch bankruptcy involving a Dutch company to camp to the United States, assert 12 Dutch code violations or 11 Dutch code violations, tack on a RICO claim- although he didn't say that- but assert these claims when there's this perfectly legitimate and accessible forum in the Netherlands for precisely the same litigation, and litigation where the defendants in this case, the American defendants, not only can assert contribution claims, but in the bank case, in the Cargill case, have actually submitted jurisdiction. So that question is answered. Could you assert contribution of claims in the Netherlands if you're sued in the Netherlands? Yes. Could you assert them here in the United States? We certainly could assert them here, but we have to bring ABN Ambro, KPN, the two other Dutch banks that were involved, all KPN individuals who are listed in some of these actions. You see, we have to bring them over here- What's the problem with that? Jurisdiction.  Jurisdiction. And I don't even think that's seriously contested by the trustees. They say there's a problem getting Mr. McMaster, who lives in New Jersey, by going to Colorado. If that's a problem with Rule 45, we have a really serious problem. And since we're the ones who are being saddled with this underlying debt of 2.4 billion euros, we think that Piper, if you read Piper, I think it's footnote 15, Piper suggests that that is a very important factor, that contribution question, and Judge Brown found it. If I might turn briefly to the cross-appeal, because I have a limited amount of time. I want to say really two things, make two points about the cross-appeal, and focus on three key facts. The first point is, whether you call it a stopple or whether it's a signatory theory, the arbitration should have been ordered here, because this was a joint venture that Quest Communications International informed and backed financially. A condition of the venture, a condition of this assignment that you've heard so much about, was that Quest submit to joint and sever liability, carry that through. So whatever happened with this joint venture, Quest Communications International was on the hook. So you can call it signatory, you can call it a stopple, but all of those contracts, the ones they signed and the ones Quest didn't sign, had arbitration clauses. Did they sign all the important stuff, all those away, all the provision, all the documents that provided for arbitration? I don't understand. I think not, actually, Your Honor. What happened was, Quest signed the joint venture agreement, and it also signed, or it appended to the joint venture agreement, the shareholders agreement, which was contemplated ultimately to be given to a Dutch subsidiary. Not strange. The joint venture agreement said, it said, not only did it say arbitration, but it said those rights, which would naturally survive the termination of agreement, survive the termination of agreement, even if some of these parties, 15.1 of the agreement, even if some of these parties  What happens? Quest Communications International, as the trustees point out, was contemplated, was no longer a party. But the law, that your law, law in other circuits, law that I don't think the trustees contest, that arbitration generally survives the termination of an agreement, would apply. Now, what they say is, well, wait a minute. Quest BV, this subsidiary, superseded, amended and superseded the terminated rights. The problem with that is twofold. One is, it doesn't do anything to the claims that arise under 1999. Right? There's, the joint venture was in operation for about eight months until November 4th, 1956, 1999. During that time, the trustees in this case, and we cite it in our brief, alleged that there was a fraud going on. Yes, they say that more occurred later. But there was a fraud going on by the same characters. The, the, the, so the answer to your question is that these arbitration rights survive the termination of the agreement at least with respect to the period in which that agreement was unquestionably the only operating agreement. Now, on a stopper, I would, I would just add very briefly that, um, the essence of the claim here, just finish this one thought and then I promise I will leave you. The essence of the claim here is that Quest Communications International Inc. told its agents go out and commit a fraud. Those agents did so. They were also agents of Quest BV, the subsidiary. And what the trustees did is they sued Quest Communications International Inc. and the individuals. The only way that the individuals were able to do things at this company, to loot this company, to hijack this company, all alleged, is because they were agents of Quest BV. So no matter how hard the trustees try, they cannot decouple Quest BV from Quest Communications International Inc. for purposes of this estoppel doctrine which we think is pretty fairly explicated in the brief. And if you have no further questions, Your Honor, I'll sit down. Judge Olivert?  Thank you, Your Honor. I'd like to assure you. Thank you. Mr. Ellerton? Yes, Your Honor. I feel it's imperative to respond to Judge Olivert's questions that he posed to my colleague about my argument. So I think I would like to respond to that. The first question was why was I addressing the convenience issues? And that's because under this court's jurisprudence and the Supreme Court jurisprudence, the convenience issues is what entitles you that is a prima facie showing of convenience entitles you to the restored level of deference that you talk about in your Loney case and your Lacey cases. And that restored level of deference is ultimately an important consideration before you get to the balance of convenience factors or the vexatious or oppressive test. So I was addressing my comments primarily to at the outset of the judge's testimony. And when he got to the back he was balancing. He found a few things going away and a few things kind of neutral. I have a little difficulty and so I like to hear a major premise or an issue and I said this is the issue and this is how I'm defending it. This is the second issue. This is how I'm doing it. The major issue as I was  at the outset was were the trustees entitled to a high degree of deference? The judge made two errors in finding that they were not entitled to that deference and there is an affirmative showing that they are entitled to that deference because they made a prima facie showing of the convenience factors that would give them that deference. I was focusing there. The second factor in the deference analysis that I wish to get to was that there's actually no rule that says we harbor special suspicions about foreign defendants. The rule has always been foreign defendants are entitled to the same level of deference as out-of-state defendants. It's a question of convenience and once you've done that we do not in the federal courts have a rule that says the federal courts have a special suspicion of foreigners. We are concerned about out-of-staters and this court has said it. We are concerned about out-of-staters because there's no presumption of convenience on the first premise which the plaintiff chooses to form. Should we be adopting the second circuit's jurisprudence? I believe they significantly transformed the investigation. Now they do use many of the factors but it is really a reinterpretation of what the second circuit which is founded by the two decisions. So I think it would be adventurous to go there. They do point out the significance of the treaties and the fact that you're being granted national access and then work your way around that, that has to stand for something. Now it is not an issue that has been important in this court's cases because this court always grants foreign plaintiffs the presumptive deference that is due. I would simply point out that the recitation of the cases that were pending in the United States not ones that only involve quest but involve KPN quest allegations. Those are on page 32 of the blue page. I would simply     of the  that were pending in the United States not ones that involve quest but involve KPN quest allegations. I would simply point out that KPN    pending  United      quest allegations. I would simply point out that KPN quest allegations are pending in the United States not ones that involve quest allegations. I would simply point out that KPN pending allegations   in the United States not ones that involve quest allegations. I would simply point out that KPN pending allegations are pending  United     involve  allegations. I  point out that KPN pending allegations are pending in the United States not ones that involve quest allegations. I would simply point out  KPN  allegations are pending  United   ones that involve quest allegations. I would simply point out that KPN pending allegations are pending in the United States not  that    I     pending allegations are pending in the United States not ones that involve quest allegations. I would simply point out that KPN pending    in the United States not not last thing I would just point out that ESTOPEM is a principle of law and order. When they used the word intimately intertwined this court made it clear that is a high standard. Could you bring your claim without reference to this? The magistrate judge looked at the complaint in great detail. He then looked at these claims in great detail and said they have nothing to do with one another. You'll never survive the intimately intertwined standard. Thank you, your honor. Thank you, your excellency, your excellency. So let's pay your attention to  case, this file, the case  Thank you.